UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELANIE COSTA,<br><br>     Plaintiff<br><br>     v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,  THE HARTFORD ACCIDENT AND INDEMNITY COMPANY and HARTFORD CASUALTY INSURANCE COMPANY,<br><br>     Defendants. | Case No. 24-cv-10961-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                      **December 10, 2024**

### I. Introduction

Plaintiff Melanie Costa ("Costa"), individually and as a personal representative for the estate of Anthony Costa, Jr. ("Mr. Costa"), has filed this lawsuit against Defendants Zurich American Insurance Company ("Zurich"), the Hartford Accident and Indemnity Company and Hartford Casualty Insurance Company ("Hartford") (collectively, the "Insurers").  Costa alleges violations of Mass. Gen. L. c. 93A and c. 176D against Zurich (Count I) and Hartford (Count II).  D. 5.  Costa also alleges breach of contract (and the implied covenant of good faith and fair dealing) against Zurich (Count III).  Id.  The Insurers have moved to dismiss the amended complaint.  D. 12; D. 15.  For the reasons stated below, the Court ALLOWS the Insurers' motions to dismiss.  D. 12; D. 15.

1

**II.     Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id.; see Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011) (noting that "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action" (quoting Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009))); Iqbal, 556 U.S. at 686 (observing that "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context"). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted). "Exhibits attached to the complaint are properly considered part of the pleading for all purposes, including Rule 12(b)(6)." Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008) (internal quotation marks and citation omitted).

**III.    Factual Background**

    **A.     <u>Materials Outside the Pleadings</u>**

At the motion to dismiss stage, the Court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted

into one for summary judgment." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint.'" Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

Within the category of official public records, "[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Maher v. Hyde, 272 F.3d 83, 86 n.3 (1st Cir. 2001) (quoting Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990)). The Court, therefore, considers Exhibits 1, 4 and 5 to Zurich's motion papers, D. 14-1; D. 14-4; D. 14-5.

In addition, the Zurich and Hartford Policies and the Maxim and G&C Subcontracts can be considered because they are central to Costa's complaint and the parties do not dispute their authenticity. The Court, therefore, considers Exhibits 2 and 3 to Zurich's motion papers, D. 14-2; D. 14-3, Exhibits A, B and C to Hartford's motion papers, D. 16-1; D. 16-2; D. 16-3, Exhibits 2 through 7 to Costa's opposition to Zurich's motion to dismiss, D. 18-2; D. 18-3; D. 18-4; D. 18-5; D. 18-6; D. 18-7, and Exhibit 2 to Costa's opposition to Hartford's motion to dismiss, D. 19-2. The Court also considers the certificates of liability insurance (Exhibit 1 to Costa's opposition to Zurich's motion to dismiss and Exhibit 1 to Costa's opposition to Hartford's motion to dismiss, D. 18-1; D. 19-1) because the authenticity of these certificates is not disputed by the parties. See D. 26 at 1–2; D. 28 at 5–7.

### B.  Factual Allegations

The Court draws the following facts from the well-pled factual allegations in the amended complaint, D. 5, the c. 93A demand attached to the complaint, D. 5-1, and the exhibits referenced above, and accepts them as true for the purpose of resolving the motions to dismiss.

### 1. The Accident and Underlying Lawsuit

On or about February 28, 2019, Mr. Costa was fatally injured in a workplace accident when approximately 1,500 pounds of steel that had been improperly rigged to a crane fell on him from four stories above (the "Accident"). D. 5 ¶¶ 1, 10, 12. Mr. Costa had been working at a Massachusetts Institute of Technology ("MIT") jobsite, on which Walsh Brothers, Inc. ("Walsh") served as the general contractor. Id. ¶¶ 8–9. G & C Concrete Construction, Inc. ("G&C") and Maxim Crane Works, L.P. ("Maxim") (collectively, the "Insured") were two of Walsh's subcontractors. Id. ¶ 79. Melanie Costa, Mr. Costa's widow, filed a lawsuit in state court on February 28, 2020 against the Insured alleging joint and several liability for negligence, gross negligence, negligent supervision, training, and management of its personnel, negligent operation and maintenance of equipment and conscious pain and suffering. Id. ¶ 33.

### 2. The Maxim and G&C Subcontracts

Maxim and G&C each separately contracted with Walsh by executing subcontracts with similar insurance provisions (the "Maxim Subcontract" and the "Hartford Subcontract"). Id. ¶ 79; D. 14-2; D. 16-3.

Section 13.1 to both Subcontracts is captioned "insurance and bonds" and provides that Maxim/Hartford "shall purchase and maintain insurance," and notes that "'Walsh Brothers, Incorporated' and the 'MASSACHUSETTS INSTITUTE OF TECHNOLOGY' shall be named as additional insured." D. 14-2 at 12; D. 16-3 at 12. Exhibit 4 to both Subcontracts provides "[a]ll Subcontractors shall purchase and maintain in a company or companies licensed to do business in the state in which the project is located, insurance as will protect the General Contractor, Subcontractors, Owner, Owners Representative and all affiliated entities from claims set forth below which may arise out of or result from the Subcontractors operations or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable."

4

See D. 5 ¶ 79; D. 14-2 at 42; D. 16-3 at 52. The Maxim Subcontract also includes an indemnification provision which provides that Maxim shall indemnify the "Contractor, Owner [and] Architect," but only in cases in which Maxim caused the damage or loss. D. 14-2 at 7.

    3.  *The Zurich and Hartford Policies*

  Zurich insured Maxim under a general liability policy (the "Zurich Policy") which "include[s] as an Additional insured any . . . organization whom [Maxim is] required to add as an additional insured under a written contract." D. 5 ¶ 80; D. 14-3 at 2. Hartford insured G&C under a general liability policy (the "Hartford Policy"), in which it agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." D. 16-1 at 63. The Hartford Policy defines "insured" as "any person or organization qualifying as such under Section II—Who is An Insured." Id. That section in turn provides, "organization(s) are . . . additional insured when you [G&C] have agreed, in a written contract . . . that such . . . organization be added as an additional insured on your [G&C's] policy." Id. at 74. The Hartford Policy also includes a section in which additional insureds may be added. Id. at 108. There, the space in the Schedule under "Name of Additional Insured Person(s) Or Organization(s)" was left blank. Id.

    4.  *Underlying Litigation and Settlement Negotiations*

  Costa filed a lawsuit in state court against Maxim and G&C Concrete on February 28, 2020. D. 5 ¶ 33. In February 2022, nearly three years after Mr. Costa's death, Zurich and Hartford made their first settlement offer of $1,000,000 collectively. Id. ¶ 56. On June 1, 2022, the Insurers, National Fire (an excess insurer), the Insured and Costa participated in a mediation. Id. ¶ 59. At this mediation, Zurich, Hartford and National Fire extended a combined offer of an additional $1,400,000 to settle all of Costa's claims against Maxim and G&C. Id. ¶ 59. On a second day of mediation on September 20, 2022, the parties extended a global offer of $11,800,000. Id. ¶ 61. A

few days later, they increased the offer to $12,000,000.  Id.  Maxim's contribution to the offer was $7,000,000.  Id.

On October 26, 2022, Costa forwarded a written demand to Hartford requesting its full policy limit, pursuant to Mass. Gen. L. c. 93A and Mass. Gen. L. c. 176D.  Id. ¶ 62.  In response, Hartford denied all allegations and did not extend an additional offer.  Id.  On April 26, 2023, Costa forwarded a supplemental demand of $3,250,000, citing the same Massachusetts laws, asserting that recent depositions of G&C's employees had provided overwhelming evidence that G&C's liability was reasonably clear immediately after the Accident.  Id. ¶ 66.  Hartford, again, denied all allegations and reiterated its prior offer of $5,000,000 to resolve G&C's liability.  Id.

On January 20, 2023, Costa sent a c. 93A demand to Zurich in its capacity as an insurer of Maxim.  Id. ¶ 65.  In a letter dated February 9, 2023, Zurich denied all allegations and did not extend an additional offer.  Id.

5. *Agreement to Settle*

On June 16, 2023, Costa's counsel sent John Donovan, counsel for Maxim, an email with the subject line "Agreement to Settle," which stated:

> My client will accept your last offer of [$7,250,000] to settle the claims against Maxim, excluding all claims against Maxim's insurers under c. 93A/176D, after the court's decision on our motion for sanctions, scheduled for hearing on June 30, 2023, arising out of the subpoenas to Maxim's insurers Zurich and National Fire. As part of the general release of Maxim, we will agree that any and all sanctions that enter against Maxim will be enforced only against Maxim's insurer(s).

Id. ¶ 68.  Donovan responded:

> Thank you for your email below concerning "Agreement to Settle."  This email will confirm that Maxim and its insurers hereby accept your settlement proposal set forth below.
>
> I am pleased that we have been able to settle this matter and resolve all claims against Maxim.  I will draft a release for your review.

Id. At a June 30, 2023 state court hearing, Maxim's counsel allegedly represented that the parties had already settled, thereby eliminating the need for a hearing on the sanctions motion. Id. ¶ 105. As a result, the court ordered further briefing and delayed the hearing on the motion to July 28, 2023. Id. ¶ 107. Costa alleges that Maxim's representations ultimately "precluded settlement of the entirety of [her] claims, including [her] claims against G&C." Id. ¶ 111.

      6.    *Supplemental Mass. Gen. L. c. 93A and Mass. Gen. L. c. 176D Demand*

More recently, and after this Court's allowance in part and denial in part of the motions to dismiss filed in the related action described below, on April 12, 2024, pursuant to Mass. Gen. L. c. 93A and Mass. Gen. L. c. 176D, Costa sent a supplemental 93A demand to Zurich and Hartford for $8,737,000, alleging that each "provided primary insurance to both . . . Maxim . . . and G&C . . . such that regardless of the Defendants' relative fault it was unfair and deceptive to fail to promptly effectuate settlement with Costa." Id. ¶ 85; D. 5-1 at 4.

**IV.   Procedural History**

Costa previously filed a related action in this Court against Zurich, Hartford and National Fire alleging breach of duty with respect to their principal or named insureds. See Costa v. Zurich Am. Ins. Co., No. 23-cv-11594-DJC.[1] There, after each of the Defendants moved to dismiss, the Court denied Hartford's motion to dismiss, allowed in part and denied in part Zurich's motion to dismiss and allowed National Fire's motion to dismiss. RD. 63 (entered Mar. 13, 2024).

Instead of seeking leave to amend her complaint in the related action, Costa filed the present lawsuit on April 12, 2024, alleging an alternate theory of liability against the Insurers: namely that each breached its duties as an additional insurer with respect to the other insurer's principal or named insured (i.e., Zurich breached its duties with respect to G&C and Hartford

---

[1] References to the docket in this case, No. 24-cv-10961-DJC, shall be to "D." References to the docket in the related case, 23-cv-11594-DJC shall be to "RD."

breached its duties with respect to Maxim) by failing to assert themselves as co-primary insurers of the other. D. 1. Just ten days later, on April 24, 2024, Costa sought to consolidate the present action with the previous action. RD. 86. While the motion to consolidate was pending, the Insurers moved to dismiss the present action. D. 12; D. 15. The Court denied the motion to consolidate without prejudice to renew after resolution of the motions to dismiss. RD. 102. The Court heard the parties on the pending motions to dismiss and took these matters under advisement. D. 33.

## V.     Discussion

### A.     Standing

Zurich suggests Costa has no standing because she lacks contractual privity with either Zurich or G&C. See D. 14 at 9–10. Claims under Chapter 93A, however, do not require contractual privity between plaintiff and defendant. Pollak v. Fed. Ins. Co., No. 13-cv-12114-FDS, 2013 WL 6152335, at *5 (D. Mass. Nov. 21, 2013) (citing In re Pharm. Indus. Average Wholesale Price Litig., 582 F.3d 156, 192–93 (1st Cir. 2009)); Clegg v. Butler, 424 Mass. 413, 419 (1997). Instead, Mass. Gen. L. c. 93A, § 9 (1) provides that any person whose rights are affected by another person's violation of Mass. Gen. L. c. 176D, § 3(9), is entitled to bring an action under Chapter 93A. Mass. Gen. L. c. 93A, § 9. Accordingly, the Court proceeds to Costa's claims under Chapter 93A and Chapter 176D.

### B.     Mass. Gen. L. c. 93A and 176D Claims (Counts I and II)

Costa asserts Chapter 93A claims against Zurich and Hartford arising from their alleged unfair claim settlement practices in violation of Chapter 176D. D. 5 ¶¶ 93–101. Zurich and Hartford's purported violations stem from their failure to provide coverage to their additional insured, G&C and Maxim, respectively.[2] Id. ¶¶ 94, 98. The scope of the insurance coverage

---

[2] To the extent Costa's Chapter 93A and Chapter 176D claims are based upon Hartford and Zurich's alleged unfair claim settlement practices with respect their primary or named insureds,

Zurich and Hartford agreed to provide is governed by their insurance policies. See D. 14-2; D. 16-1; D. 16-2; D. 18-2; D. 18-3; D. 18-4; D. 18-5; D. 18-6; D. 18-7.

The interpretation of an insurance policy is a question of law for the Court. See Ruggerio Ambulance Serv. v. Nat'l Grange Mut. Ins. Co., 430 Mass. 794, 797 (2000). The Court "construe[s] an insurance policy under the general rules of contract interpretation, beginning with the actual language of the polic[y], given its plain and ordinary meaning." Easthampton Congregational Church v. Church Mut. Ins. Co., 916 F.3d 86, 91 (1st Cir. 2019) (quoting AIG Prop. Cas. Co. v. Cosby, 892 F.3d 25, 27 (1st Cir. 2018)). While any ambiguity "is strictly construed against the insurer," id. at 92, "provisions [that] are plainly and definitely expressed in appropriate language must be enforced in accordance with [the policy's] terms." High Voltage Eng'g Corp. v. Fed. Ins. Co., 981 F.2d 596, 600 (1st Cir. 1992) (quoting Stankus v. N.Y. Life Ins. Co., 312 Mass. 366, 369 (1942)). "In discerning the meaning of the contract provisions, [the Court is] guided by 'what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.'" McGilloway v. Safety Ins. Co., 488 Mass. 610, 613–14 (2021) (quoting Hazen Paper Co. v. U.S. Fid. & Guar Co., 407 Mass. 689, 700 (1990)).

### 1. *The Zurich and Hartford Policies Covered Parties the Named Insured Was Required to Insure*

The parties do not appear to dispute that the Zurich and Hartford policies obliged the Insurers to provide coverage to any entity the named insured was required by contract to add as an additional insured. See D. 5 ¶¶ 80–81; D. 14 at 14–15; D. 16 at 14; D. 18 at 10–11; D. 19 at 17–18. They do, however, dispute the import of insurance certificates issued to Zurich and Hartford's insured. See D. 18 at 8–9; D. 19 at 6; D. 26 at 1–2; D. 28 at 5–7.

---

the Court does not address these allegations because they are already before the Court in the related case. RD. 63 at 6-12.

Costa suggests these certificates "expressly negate[]" Zurich and Hartford's "assertion[s] that [they] did not issue additional insured coverage as required by the" Walsh-Maxim or Walsh-GC "contract[s] for the MIT job." D. 18 at 9; D. 19 at 6. But these certificates of insurance have no legal effect: certificates of insurance are "simply . . . form[s] that [are] completed by an insurance broker or agent at the request of a policyholder to document the fact that an insurance policy has been written." Commonwealth v. Gall, 58 Mass. App. Ct. 278, 289 (2003). The certificates issued to Zurich and Hartford's insured expressly state that they are "issued as a matter of information only and confer[] no rights upon the certificate holder," "do[] not affirmatively or negatively amend, extend or alter the coverage afforded by the policies" listed in the certificate and "do[] not constitute [] contract[s] between the issuing insurer(s), authorized representative or producer, and the certificate holder." D. 18-1 at 2; D. 19-1 at 2; see D. 26 at 1–2; D. 28 at 5–6.

Even considering the certificates of insurance, the language Costa highlights in them, which provides that "any entity required by contract or agreement [is] additional insured," is consistent with, and cannot expand, the requirements in the underlying insurance policies. D. 19-1 at 3; see D. 18-1 at 2; D. 5 ¶¶ 80–81; D. 14-3 at 2 (providing that "who is an insured is amended to include as an additional insured any . . . organization whom [Maxim is] required to add as an additional insured under a written contract"); D. 16-1 at 74 (providing that "organization(s) are an additional insured when [G&C has] agreed, in a written contract . . . that such . . . organization be added as an additional insured on [its] policy"). They do not, by their express terms, expand the existing policy terms.

    2. *The Maxim and G&C Subcontracts Do Not Require Each Subcontractor to Provide Insurance to the Other Subcontractor*

The parties dispute whether the applicable subcontracts require G&C and Maxim to provide coverage to each other. See D. 14 at 11–14; D. 16 at 14–19; D. 18 at 19–22; D. 19 at 16–

10

21; D. 26 at 3; D. 28 at 7–8. To assert the existence of such an obligation, Costa points to § 13.1 of the Maxim and G&C Subcontracts, which require "[t]he Subcontractor [to] purchase and maintain the insurance policies as per Exhibit 4." D. 5 ¶ 79; D. 14-2 at 12; D. 16-3 at 12. Exhibits 4 to the Maxim and G&C Subcontracts in turn require "[a]ll Subcontractors shall purchase or maintain . . . insurance as will protect the General Contractor, Subcontractors, Owner, Owners Representative and all affiliated entities . . . ." D. 5 ¶ 79; D. 14-2 at 42; D. 16-3 at 52. In asserting that this language requires each Subcontractor to name the other as an additional insured, Costa appears to ignore that the word "Subcontractor" is a defined term under each agreement. D. 14-2 at 2, 89; D. 16-3 at 2; see D. 14 at 13–14. The Maxim Subcontract defines only AmQuip Crane Rental LLC and Maxim Crane Works, L.P. as "Subcontractors." D. 14-2 at 2, 89. The G&C Subcontract defines only G&C Concrete Construction, Inc. as "Subcontractor." D. 16-3 at 2. As a matter of law, unambiguous contract language must be "interpret[ed] . . . according to its plain terms," Bank v. Int'l Bus. Machs. Corp., 145 F.3d 420, 424 (1st Cir. 1998), and the definitions provided by the parties make clear that G&C was not a "Subcontractor" under the Maxim Subcontract and Maxim was not a "Subcontractor" under the G&C Subcontract, see Quintel Commc'ns, Inc. v. Fed. Transtel, Inc., 142 F. Supp. 2d 476, 482 (S.D.N.Y. 2001) (noting that defined terms "make[] the job of construction particularly easy").[3]

Tellingly, Exhibit 4 to both Subcontracts provides that "'Walsh Brothers, Incorporated' and the 'MASSACHUSETTS INSTITUTE OF TECHNOLOGY' shall be named as additional

---

[3] Costa suggests a requirement for one subcontractor to provide insurance for other subcontractors would accomplish Walsh's business objectives, D. 18 at 19–20; D. 19 at 16–19, but "[i]f a court determines that the terms of the contract are unambiguous, it should resolve interpretive disputes based on the language of the contract, without resort to extrinsic evidence," Minturn v. Monrad, 64 F.4th 9, 14 (1st Cir. 2023), which is appropriate here.

11

insured." D. 14-2 at 12; D. 16-3 at 12. Neither the Maxim Subcontract nor the G&C Subcontract includes any similar reference to the other subcontractor. See D. 14-2; D. 16-3. In fact, neither Subcontract includes any reference to the other subcontractor at all. Id. In addition, Exhibit 4 to the Maxim and G&C Subcontracts requires the "Subcontractor and . . . each of Subcontractor's subcontractors . . . [to] name [as insured] The Contractor, Owner and All related Entities, their employees and agents and any other parties as may be noted in this contract or agreement" but does not require the other subcontractors to be named as insured. D. 14-2 at 43; D. 16-3 at 53; see D. 16 at 18.[4] The fact that the Contractor and Owner are specifically listed as insured, but additional subcontractors are not, suggests the subcontractors are excluded from this provision. See Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 179 (1st Cir. 1995) (observing that "when parties list specific items in a document, any item not so listed is typically thought to be excluded"); Brillante v. R.W. Granger & Sons, Inc., 55 Mass. App. Ct. 542, 547 (2002) (concluding that a general contractor was not an additional insured under a subcontract because "the subcontract specifically detailed the insurance [the subcontractor] was required to obtain prior to commencing performance" but "[t]here was no express requirement in the subcontract that [the subcontractor] name [the general contractor] as an additional insured"); Callender v. CSH Realty Corp., No. 042442, 2007 WL 2705529, at *4 (Mass. Super. Ct. Aug. 31, 2007) (observing that "[a] contract provision that requires the contractor to carry liability insurance does not mean that the owner will be listed as an additional insured, unless the contract expressly so provides").[5] The

---

[4] Costa is correct that this language does not preclude coverage of other subcontractors to the extent they qualify as "other parties as may be noted in this contract or agreement." D. 19 at 21. Nevertheless, this language does not evince an intent that such subcontractors are insured, when, as established, the remaining contractual language suggests otherwise.

[5] Costa attempts to distinguish Callender and Brilliante on the basis that they involved direct contract claims rather than claims under Chapter 93A, D. 19 at 19–20, but Chapter 93A

Court, therefore, concludes that the Maxim Subcontract did not require Maxim to insure G&C and the G&C Subcontract did not require G&C to insure Maxim, meaning neither the Zurich nor the Hartford policies provided such insurance.[6]

### 3. Costa's 93A Claims Cannot Survive Where She Has Not Alleged a Breach of Contract

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. c. 93A, § 2(a). "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a [Chapter] 93A violation is a question of law." Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 54 (1st Cir. 1998) (alteration in original) (citation and internal quotation marks omitted) (quoting Ahern v. Scholz, 85 F.3d 774, 797 (1st Cir. 1996)). "A mere breach of contract does not constitute an unfair or deceptive trade practice under 93A," Com. Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 40 (1st Cir. 2000), and "[r]ecovery under [Chapter] 93A for a violation of [Chapter] 176D, § 3(9), is unlikely when '[a]n insurance company . . . in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy.'" McGilloway, 488 Mass. at 618 (quoting Gulezian v. Lincoln Ins. Co., 399 Mass. 606, 613 (1987)). Dismissal of Costa's Chapter 93A claims is

---

claims for violations of Chapter 176D, § 3(9) cannot survive when the insurance policy was never violated. See, e.g., Merullo v. Amica Mut. Ins. Co., No. 22-cv-10410-DJC, 2022 WL 17417717, at *4 (D. Mass. Dec. 5, 2022); Reese v. Progressive Direct Ins. Co., No. 22-cv-10539-ADB, 2023 WL 1929854, at *4 (D. Mass. Feb. 10, 2023), aff'd, No. 23-1200, 2024 WL 1025029 (1st Cir. Feb. 9, 2024). Moreover, while Costa asserts that this case is more akin to Scottsdale Ins. Co. v. United Rentals (N. Am.) Inc., 152 F. Supp. 3d 15, 21–23 (D. Mass. 2015), where another session of this Court concluded a party was an additional insured under a contract, the party seeking coverage in Scottsdale was specifically named in the contract. Id.; see D. 19 at 20.

[6] Given this conclusion, the Court need not reach other arguments raised by the Insurers for dismissal. D. 14 at 10–12, 15–16; D. 16 at 19 n.11.

13

warranted here where the Court has concluded that Zurich and Hartford's interpretations are not only plausible, but also correct. See, e.g., Merullo, 2022 WL 17417717, at *4; Reese, 2023 WL 1929854, at *4. Accordingly, Counts I and II are dismissed.

### C. Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing (Count III)

#### 1. Costa Has Not Alleged a Breach of Contract

Costa alleges Zurich breached Costa's settlement agreement with Maxim by representing through Maxim that the parties had already settled, thereby eliminating the need for a hearing on a pending sanctions motion. D. 5 ¶ 105. According to Costa, Zurich breached the settlement agreement by allowing this representation, when in fact, the settlement agreement "required the parties to commence the June 30, 2023 hearing on Plaintiff's motion for sanctions." Id. ¶¶ 104–05. This purported breach of contract is the same breach alleged in the related action. See id. ¶¶ 102–11; RD. 26 ¶¶ 44-45. Although Costa insists her allegations here are "substantially more detailed," D. 18 at 22, the alleged breach still turns on the interpretation of a purported contract contained in the exchange of emails on or about June 16, 2023 as recounted above. See D. 5 ¶ 68; RD. ¶¶ 30-31. Since the same contractual language is at issue, the reasons supporting the Court's initial dismissal stand: "the alleged Agreement to Settle did not bar the parties from disclosing to the court that they had reached such agreement" and "Zurich's alleged failure to speak up when Maxim's counsel allegedly misrepresented the nature of the agreement is likewise not a breach of any express term of the agreement." RD. 63 at 18.

Costa points out that here she makes additional allegations regarding damages. Compare D. 5 ¶¶ 102–11, with RD. 26 ¶¶ 43–46. These allegations do not make a material difference here, because the Court concluded in the related action that even assuming a contract, there was no

breach. RD. 63 at 18. The Court, therefore, dismisses Costa's breach of contract claim against Zurich.

### 2. Costa Has Not Alleged a Breach of the Implied Covenant of Good Faith and Fair Dealing

Costa also alleges a breach of the implied covenant of good faith and fair dealing. D. 5 ¶¶ 102–11. Zurich urges dismissal of this claim because no contract enforceable against Zurich exists. D. 14 at 17–19. An implied covenant of good faith and fair dealing cannot exist without a valid contract. Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005). "A contract must have consideration to be enforceable and '[i]n order for a contract to have valid consideration, the contract must be a bargained-for exchange in which there is a legal detriment of the promisee or a corresponding benefit to the promisor.'" Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 201 (1st Cir. 2004) (alteration in original) (quoting Hinchey v. NYNEX Corp., 144 F.3d 134, 142 (1st Cir. 1998)). The bargained-for exchange with respect to Costa and Maxim is clear: Costa settles her claims against Maxim in exchange for $7,250,000. D. 5 ¶ 68. But with respect to Zurich, the purported contract creates "a legal detriment in exchange for nothing:" it does not resolve claims against Zurich, yet asserts Zurich is responsible for "any and all sanctions that enter against Maxim." D. 14 at 18; see D. 5 ¶¶ 68, 106. In addition, Costa does not even allege that Zurich was a party to the settlement agreement. See D. 5. As this Court noted in the prior action, "Costa has not alleged that Maxim's counsel served as Zurich's legal counsel, that Maxim's counsel had a legal duty to Zurich or that the relationship between the two would subject Maxim's counsel to Zurich's control." RD. 63 at 15. Since the settlement agreement is not enforceable as Zurich, Costa's related claim for breach of the implied covenant of good faith and fair dealing against Zurich also must be dismissed. Mass. Eye & Ear, 412 F.3d at 230.

Accordingly, the Court allows the motion as to Count III.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS the Insurers' motions to dismiss. D. 12; D. 15.[7]

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

[7] At oral argument, the Court asked whether the insurance policies included integration clauses. Costa subsequently requested "that if the Court is considering dismissal on [the basis of the integration clauses] the Court consider and accept supplemental briefing on this issue." D. 35. Because the Court has not reached any issue related to any integration clauses, Costa's request to file additional briefing, id., is denied as moot.